# United States Court of Appeals
# for the Federal Circuit

---

**TONY C. HALL,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2012-7115

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-4309, Judge Robert N. Davis.

---

Decided: June 7, 2013

---

KENNETH M. CARPENTER, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

WILLIAM J. GRIMALDI, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel and MARTIE ADELMAN, Staff

Attorney, United States Department of Veterans Affairs, of Washington, DC.

---

Before RADER, *Chief Judge,* SCHALL and PROST, *Circuit Judges.*

PROST, *Circuit Judge.*

Tony Hall appeals the decision of the Court of Appeals for Veterans Claims ("Veterans Court") affirming the denial of his disability claim for post-traumatic stress disorder ("PTSD"). Because the Veterans Court made no error of law, we affirm.

## I. BACKGROUND

On April 25, 1990, Mr. Hall entered active duty in the Army. However, he "refused to go to basic training" and asked to go home. J.A. 34. He also "threatened to hurt either himself or someone else," demonstrated a "phobia of people in general," and admitted to receiving one year's probation after an "arrest for carrying a gun." J.A. 34. A report from an in-service psychiatric evaluation showed that Mr. Hall was believed to suffer from an "avoidant personality disorder." J.A. 35. His superior officers and multiple counselors recommended that he be terminated from service. Mr. Hall was officially discharged from the Army on May 9, 1990, fifteen days after he entered service.

In August 2006, Mr. Hall filed a claim for disability benefits with the Veteran's Administration ("VA"). Among other grounds for his claim,[1] Mr. Hall asserted

---

[1] The Veterans Court addressed several of those other grounds in its decision, but Mr. Hall appeals only the denial of his disability claim based on PTSD. We therefore limit our opinion to the facts and issues relevant to that aspect of Mr. Hall's claim.

that he suffered PTSD caused by an in-service sexual assault (a "military sexual trauma" or "MST") perpetrated by a superior officer. J.A. 37. The regional office of the VA denied his claim for lack of service connection because, in part, Mr. Hall failed to demonstrate a "verifiable military stressor." J.A. 24.

The Board of Veterans Appeals ("Board") affirmed the denial. It agreed that Mr. Hall had failed to prove that the alleged sexual assault actually occurred. The Board first held that Mr. Hall could not rely solely on his allegations and statements to prove the assault occurred because the regulation he argued authorized him to do so, 38 C.F.R. § 3.304(f)(3), did not apply to sexual assault stressors. The Board then concluded that Mr. Hall's allegations of a sexual assault deserved little weight because he was not a "credible historian." J.A. 37. The Board reasoned that Mr. Hall never initially mentioned a sexual assault in his claim, had been diagnosed with "psychotic symptoms that included paranoid delusions and ideations," indicated on a supporting VA form that his stressor occurred four days after his discharge from the Army, twice falsely claimed that he served in the Army for three years, and asserted—without any support—that he engaged in combat while in service. J.A. 36-38. The Board also determined that there was no credible evidence corroborating Mr. Hall's sexual assault allegations: there were "no official reports of an assault," "service or service treatment reports [did not] contain any notion of an assault," and the few statements in medical reports linking Mr. Hall's PTSD to an MST were based on his unreliable oral history. J.A. 38. The Board thus found that Mr. Hall had presented insufficient proof that the alleged sexual assault occurred and, therefore, was not eligible for benefits.

On appeal, the Veterans Court affirmed the Board's decision. It rejected Mr. Hall's argument that the Board erred by failing to apply 38 C.F.R. § 3.304(f)(3) to his

claim.  That regulation, the court held, required Mr. Hall to demonstrate that the alleged sexual assault was "related to [his] fear of hostile military or terrorist activity" and was "consistent with the places, types, and circumstances of [his] service"—a showing he failed to make.  J.A. 2.

Mr. Hall timely appealed the Veterans Court's decision.

## II. DISCUSSION

Mr. Hall raises a single argument on appeal: the Veterans Court legally erred by holding 38 C.F.R. § 3.304(f)(3) inapplicable to his claim.[2]  We have jurisdiction under 38 U.S.C. § 7292 and review such questions of law de novo.  *Akers v. Shinseki*, 673 F.3d 1352, 1355 (Fed. Cir. 2012).

In order to prove the required service connection for a PTSD disability claim, a veteran normally must provide "credible supporting evidence that the claimed in-service stressor occurred."  38 C.F.R. § 3.304(f).  However, the subsection Mr. Hall argues should apply to his claim, § 3.304(f)(3), grants veterans a special exception to that normal evidentiary burden by permitting them to rely on their lay testimony alone without corroborating evidence to prove that their claimed in-service PTSD stressor occurred.  The subsection states:

> If a stressor claimed by a veteran is related to the veteran's *fear of hostile military or terrorist activity* and a VA psychiatrist or psychologist, or a psy-

---

[2]    The government asserts that Mr. Hall waived any argument concerning § 3.304(f)(3) because he "omitted two phrases found in th[at] section" in his argument before the Veterans Court.  Appellee's Br. 7.  While those omissions might constitute poor briefing, there was no waiver:  Mr. Hall plainly challenged the denial of his claim based on a failure to apply § 3.304(f)(3).

chiatrist or psychologist with whom VA has contracted, confirms that the claimed stressor is adequate to support a diagnosis of posttraumatic stress disorder and that the veteran's symptoms are related to the claimed stressor, in the absence of clear and convincing evidence to the contrary, provided the claimed stressor is consistent with the places, types, and circumstances of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. For purposes of this paragraph, "fear of hostile military or terrorist activity" *means that a veteran experienced, witnessed, or was confronted with an event or circumstance* that involved actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others, *such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft*, and the veteran's response to the event or circumstance involved a psychological or psychophysiological state of fear, helplessness, or horror.

38 C.F.R. § 3.304(f)(3) (emphases added).

As its plain language indicates, subsection (f)(3) applies only if a veteran has a "fear of hostile military or terrorist activity." *Id.* The subsection expressly requires that fear to have originated from an "event or circumstance" that the veteran "experienced, witnessed, or was confronted with" and that "involved actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others." *Id.* It sets forth several examples of such events or circumstances. *Id.* Read in context of the subsection's use of the word "hostile," those examples indicate that the "event or circumstance" must have been part of terrorist activity (which is innately

hostile) or part of enemy military activity (since only enemy, not friendly forces, are hostile). *See id.* ("*incoming* artillery, rocket or mortar fire," "*suspected sniper* fire," and "*attack* upon *friendly* military aircraft" (emphases added)). We therefore conclude that § 3.304(f)(3) can apply only if a veteran's claimed in-service PTSD stressor relates to an event or circumstance that a veteran experienced, witnessed, or was confronted with and that was perpetrated by a member of an enemy military or by a terrorist.[3] *See id.*; *see also Acevedo v. Shinseki*, 25 Vet. App. 286, 291 (2012) ("[T]he examples provided [in subsection (f)(3)] all involve actions originating from individuals who commit hostile military or terrorist acts toward the U.S. military, not nefarious, or even criminal, acts of one service member directed at another service member.").

Mr. Hall asserts that such an interpretation of the scope of § 3.304(f)(3) does not comport with the subsection's regulatory history. That argument is unconvincing. In response to public comments made during the notice period prior to enactment of the subsection, the VA stated that "th[e] regulation is not limited to events or circumstances perpetrated by a foreign enemy," that "fear of hostile military or terrorist activity . . . is not limited to any particular class of individuals," and that the examples in the subsection are "to illustrate what qualifies as an event or circumstance, not a defining restriction."[4]

---

[3]   Of course, for § 3.304(f)(3) to apply, several other requirements must be met. For example, the stressor must be "consistent with the places, types, and circumstances of the veteran's service" and the veteran had to have experienced "fear, helplessness or horror" because of the event or circumstance he faced.

[4]   Mr. Hall's counsel highlighted the sections of regulatory history we address not only in the briefing he submitted on behalf of Mr. Hall, *see* Reply Br. 5-6, but

Stressor Determinations for Posttraumatic Stress Disorder, 75 Fed. Reg. 39843-01, 39844 (July 13, 2010). The VA made those statements to clarify that § 3.304(f)(3) could extend to "events such as the injuring or killing of civilians" and to "domestic as well as foreign activity." *Id.* Our reading of § 3.304(f)(3) does not prevent its application to the injuring or killing of civilians or to domestic activity perpetrated by a domestic enemy (which can fall under a natural reading of the term "terrorist activity"). And we see the examples in § 3.304(f)(3) as illustrative of the proper interpretation of the term "hostile" when read in context of the whole subsection and in light of the special evidentiary exceptions § 3.304(f) affords to particular veterans. *See* 38 C.F.R. §§ 3.304(f)(1) (providing special evidentiary exceptions to veterans who were diagnosed with PTSD during service); 3.304(f)(2) (providing special evidentiary exceptions to veterans whose claimed PTSD stressor is related to combat); 3.304(f)(4) (providing special evidentiary exceptions to veterans who

---

also in a Rule 28(j) letter filed with the court after oral argument. Of course, if the letter presented new argument, it would be improper. *See Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1335 (Fed. Cir. 1998). But rearguing identical points from briefing already submitted based on authority already fully cited and argued to the court in that briefing is likewise improper. *See* Fed. R. App. P. 28(j) ("If pertinent and significant authorities *come to a party's attention after* the party's brief has been filed—or *after* oral argument but before decision—a party may promptly advise the circuit clerk by letter . . . ." (emphases added)). The purpose of Rule 28(j) is not to expand the page limit for briefing or permit counsel to highlight certain content of the briefing after oral argument.

were prisoners-of-war); 3.304(f)(5)[5] (providing special evidentiary exceptions to veterans whose PTSD claim is "based on in-service personal assault"). Moreover, of particular relevance here, the VA specifically refused public suggestions that "the rule should cover stressors such as *MST*, abuse by military personnel of subordinate military personnel, harassment, suicide of a fellow service member, witnessing a military vehicle accident in the United States, a fellow soldier's or sailor's post-service suicide, and social, political, and economic discrimination" because those suggestions were "outside the scope of th[e] rule." 75 Fed. Reg. at 39845 (emphasis added).

In light of our reading of § 3.304(f)(3), we see no legal error in the Veterans Court's decision. The court held in part that subsection (f)(3) does not apply to Mr. Hall's claim because Mr. Hall failed to show that his claimed stressor related to his "fear of hostile military or terrorist activity." Mr. Hall argues that to be error because his asserted PTSD stressor relates to "his fear of [a] hostile sexual assault . . . by his superior in the military." Appellant's Br. 8-9. But Mr. Hall has not shown—and does not allege—that the assault he claims to have experienced was perpetrated by a member of an enemy military or by a terrorist. Therefore, Mr. Hall's claimed PTSD stressor is not related to his "fear of hostile military or terrorist activity" as required by § 3.304(f)(3). Accordingly, the Veterans Court correctly held that subsection (f)(3) does not apply to Mr. Hall's claim.

### AFFIRMED

---

[5] A large part of Mr. Hall's briefing focuses on how the existence of § 3.304(f)(5) does not prevent the application of subsection (f)(3). Because of our holding and the scope of issues on appeal, we need not decide that point or whether subsection (f)(5) applies to Mr. Hall's claim.